Troutman Pepper Hamilton Sanders LLP
875 Third Avenue
New York, New York  10022

troutman.com

**troutman**
**pepper**

**Stephen J. Steinlight**
stephen.steinlight@troutman.com

January 6, 2022

**VIA ECF**
Honorable Pamela K. Chen
225 Cadman Plaza, Chambers N 631
Brooklyn, New York 11201

Re:    ***Zalmen Pollak v. Portfolio Recovery Associates, LLC***; No. 1:21-cv-06738-PKC-
       **RML; Letter Brief in Response to Order to Show Cause**

Your Honor:

This firm represents Defendant Portfolio Recovery Associates, LLC ("PRA") in the above-referenced matter. PRA submits the following response to the Court's December 20, 2021 Order directing PRA to show cause as to why this matter should not be remanded to state court for lack of subject matter jurisdiction. For the reasons stated herein, Plaintiff has pled concrete and particularized harm sufficient to confer Article III standing, and this Court should exercise jurisdiction over this matter.

## I.   Factual Background and Procedural Posture

This action concerns alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* ("FDCPA"). Specifically, Plaintiff alleges PRA mailed him a letter in an attempt to collect a debt Plaintiff claims he did not owe. If, as Plaintiff alleges, he does not owe the debt, PRA's various representations in the letter – such as the statement of the outstanding balance, the name of the creditor to whom the debt was owed, and the assertion that Plaintiff owed a debt at all – were, according to Plaintiff, false and misleading representations in violation of Section 1692e of the FDCPA. *See* Compl. ¶¶ 47 ("The Letter materially misrepresented the enforceability of the alleged Debt."), 48 ("The Letter was materially misleading as to the ownership of the alleged Debt."), 49 ("The Letter was materially deceptive as to the validity of the alleged Debt."), Dkt. No. 1-1. Plaintiff claims he was misled and injured by these supposed material misrepresentations and requests the Court redress his injuries "with damages." *Id.* at ¶¶ 50, 53.

Although Plaintiff brings no claim under Section 1692g of the FDCPA, Plaintiff also appears to allege PRA violated this Section after he requested PRA send him various documents to validate the debt but PRA did not "provide information sufficient to establish valid ownership." Compl. ¶ 43.

Based on these alleged violations of the FDCPA, Plaintiff claims he was "forced to hire counsel and therefore has incurred damages . . . in reviewing Plaintiff's rights under the law" and "to investigate the enforceability of the Debt." Compl. ¶¶ 56-57. Plaintiff also requests the Court award him other unspecified damages to redress his injuries, Compl. ¶ 53, including "actual damages in an amount to be determined at trial as provided under 15 U.S.C. § 1692k(a)(1)." Compl. p. 11, "Prayer for Relief" subparagraph "e".

The action was originally filed in the Supreme Court of the State of New York, County of Kings, on January 11, 2021. PRA timely removed the action to this Court on December 6, 2021. (Dkt.



No. 1.) On December 20, 2021, the Court issued an Order directing PRA to show cause as to why this matter should not be remanded to state court for lack of subject matter jurisdiction.

## II.    Legal Standard

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citation omitted). At the pleading stage, it is a low threshold to establish standing. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015) (citation omitted) ("'At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing."); *see also Attias v. CareFirst, Inc.*, 865 F.3d 620, 622 (D.C. Cir. 2017) ("Plaintiffs have cleared the low bar to establish their standing at the pleading stage.").

A plaintiff may plead a tangible or intangible harm to meet the injury-in-fact-requirement of Article III. *See Ramirez*, 141 S. Ct. at 2204. "When the claimed injury is physical, monetary, or a traditional intangible harm like emotional distress, concreteness is easily established." *Cavazzini v. MRS Assocs.*, No. 21-CV-5087 (ARR) (ST), 2021 U.S. Dist. LEXIS 233083, at *8 (E.D.N.Y. Dec. 6, 2021); *see also Age Kola v. Forster & Garbus LLP*, No. 19-CV-10496 (CS), 2021 U.S. Dist. LEXIS 172197, at *12 (S.D.N.Y. Sept. 10, 2021) ("Tangible harms, including '[m]onetary harms' are among those that 'readily qualify as concrete injuries under Article III.'") (quoting *Ramirez*, 141 S. Ct. at 2204). "Intangible harms also may be concrete, provided they satisfy the 'close relationship' analysis, in which the 'inquiry [is] whether plaintiffs have identified a close historical or common-law analogue for their asserted injury.'" *Id.*

## III.    Argument

### a.    The Court has Original Jurisdiction over Plaintiff's Claims

A "civil action" initially filed in state court may be removed by the defendant to the federal district court embracing the place where the state court action is pending, so long as the district court has original subject matter jurisdiction over the plaintiff's claim.  *See* 28 U.S.C. § 1441; *Lupo v. Human Affairs Int'l*, 28 F.3d 269, 271 (2d Cir. 1994).  In cases of removal, the removing party bears the burden of establishing that all jurisdictional requirements have been met.  A defendant can remove a civil action from state to federal court if the latter has *original jurisdiction* over the action. 28 U.S.C. § 1441(a). A federal court has original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### b.    Plaintiff's request for unspecified "actual damages" under the FDCPA, together with allegations of specific monetary harm, are sufficient to satisfy the concreteness requirement for purposes of Article III standing.

Plaintiff's request for "actual damages" under the FDCPA, alone, is sufficient to confer Article III standing because it is a request for monetary damages. However, Plaintiff also alleges other harm, including damages arising out of his need to hire counsel to prosecute his claim against PRA, that is similarly sufficient to establish Article III standing.

As the Supreme Court in *Ramirez* aptly noted, "[i]f a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." In his Complaint, Plaintiff specifically requests actual damages, *i.e.*, monetary damages, under the FDCPA. *See* Compl. p. 11, "Prayer for Relief" subparagraph "e". In other areas of the Complaint, Plaintiff states



that his injuries may be redressed with an award of "damages." *Id*. at ¶ 53. Although Plaintiff does not specify what exactly he should be compensated for, it is clear that he is seeking damages to redress a monetary injury allegedly caused by PRA. Under *Ramirez*, and in accordance with subsequent decisions by courts in the Second Circuit, Plaintiff's request for monetary damages arising out of PRA's conduct is sufficient, by itself, to meet the injury-in-fact requirement for Article III standing. As such, the Court's inquiry may end here.

Nonetheless, Plaintiff also alleges more specific monetary harm that also supports Article III standing. In Paragraph 56 of the Complaint, Plaintiff alleges, "[a]s a result of Defendant's conduct, Plaintiff was forced to hire counsel and therefore **has incurred damages** including reasonable attorneys' fees in reviewing Plaintiff's rights under the law **and** prosecuting this claim." (emphasis added). In the very next paragraph, Plaintiff makes it even more clear that he alleges monetary harm in the form of "time and money to investigate the enforceability of the debt." Compl. ¶ 57.

Thus, Plaintiff's allegations of monetary harm are two-fold. On the one hand, he alleges he incurred attorney's fees to "prosecute" the instant action. This, standing alone, is an insufficient basis for this Court to exercise Article III jurisdiction. *See Cavazzini*, 2021 U.S. Dist. LEXIS 233083, at *19 ("[T]he burdens of bringing a lawsuit cannot be the sole basis for standing.").

But Plaintiff alleges more. Indeed, he specifically alleges that he *also* incurred attorney's fees "reviewing Plaintiff's rights under the law" and "investigat[ing] the enforceability of the Debt." Compl. ¶¶ 56-57. These alleged damages stand separate and distinct from the "burdens of bringing a lawsuit," a fact Plaintiff recognized when he pled them as separate and distinct elements of his claimed damages. And, as this Court has previously noted, such costs incurred to mitigate the risk of harm *are* sufficient to support Article III standing. *Cavazzini*, 2021 U.S. Dist. LEXIS 233083, at *18 (citing *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021)) ("[W]hen a plaintiff faces a sufficient risk of harm the time, money, and effort spent mitigating that risk are also concrete injuries.").

Plaintiff has pled a concrete monetary injury. Plaintiff has Article III standing. This Court may exercise jurisdiction over this matter. *Ramirez*, 141 S. Ct. 2190, 2204 ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.").

   **c. Plaintiff's alleged injury is "concrete" for Article III standing purposes because his FDCPA claims have a close historical or common-law analogue to actions sounding in fraud and/or intentional misrepresentation.**

This Court's exercise of Article III jurisdiction at this early stage of the litigation is further warranted because Plaintiff's Section 1692e claim has a close historical or common-law analogue; namely, actions sounding in fraud or misrepresentation. As the Supreme Court recently clarified in *Ramirez*, intangible injuries arising from claims with a "close historical or common-law analogue" are "chief" among those qualifying as "concrete" for Article III standing purposes. 141 S. Ct. at 2204 ("Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.").

Several courts have recognized that claims under the FDCPA, including under Section 1692e, are analogous to common-law claims of fraud and negligent misrepresentation. *See Age Kola*, 2021 U.S. Dist. LEXIS 172197, at *16-19 (citations omitted) ("Given 'Congress's rationale for enacting the FDCPA and granting a right to be free from abusive debt practices,' some courts



have indeed recognized a common-law analog to the 'legally cognizable harms' of 'fraudulent and negligent misrepresentation.'"); *see also Bassett v. Credit Bureau Servs.*, No. 8:16CV449, 2021 U.S. Dist. LEXIS 154458, at *9 (D. Neb. Aug. 13, 2021) ("A § 1692(e) violation demonstrates an imminent threat of monetary harm, has a long historical foundation, and is closely related to similar harms recognized at common law [including fraudulent misrepresentation]."); *Aguirre v. Absolute Resolutions Corp.*, No.  15 C 11111, 2017 U.S. Dist. LEXIS 159107, at *8-9 (N.D. Ill. Sept. 27, 2017) ("Plaintiff claims that the letter contained threatening language which Defendants could not, and did not, act upon in the attempt to collect on a debt . . . . This allegation is well within the heartland of common law fraud.").

"As a general matter, the Court has explained that 'history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider.'" *Ramirez*, 141 S. Ct. at 2204 (citation omitted). To determine whether an alleged harm is sufficiently "concrete" for purposes of Article III standing, then, the court's "inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*. Here, Plaintiff has alleged precisely that, asserting a statutory claim analogous to common law fraud or misrepresentation.[1] As a result, Plaintiff's alleged injuries are sufficient for Article III standing, and this Court may exercise jurisdiction to adjudicate this matter.

### d. In the alternative, jurisdictional discovery will establish standing and is favored by the Second Circuit.

In the alternative, this Court should permit the parties the opportunity for jurisdictional discovery before finding it lacks Article III jurisdiction.  The Second Circuit has held that courts should afford ample opportunity to secure and present evidence relevant to the existence of jurisdiction. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 149 (2d Cir. 2011) (reviewing decision denying jurisdictional discovery related to standing). Courts have allowed jurisdictional discovery where there has been a threshold showing for some basis to assert jurisdiction, such as facts that would support a colorable claim of jurisdiction. *Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201 (GEL), 2006 U.S. Dist. LEXIS 9677, at *17-18 (S.D.N.Y. Mar. 9, 2006).

"The party asserting subject-matter jurisdiction bears the burden of showing a factual basis for jurisdiction by a preponderance of the evidence." *Astra Oil Trading NV v. PRSI Trading Co. LP*, No. 08 Civ. 10467, 2009 U.S. Dist. LEXIS 30245, at *5 (S.D.N.Y. Apr. 6, 2009) (citation omitted) [hereinafter *Astra Oil*].  However, "'where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)). "A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *Id*. (internal quotation marks omitted). "After limited discovery on the jurisdictional issue, the matter might be appropriate for resolution on motion supported by affidavits." *Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co*., 436 F.3d 82, 88 (2d Cir. 2006) (internal citation omitted). The district court can also rely on documentary evidence or conduct an evidentiary

---

[1]      It is noteworthy that Plaintiff's allegations in Paragraphs 48-53 track the three-part test for Article III standing as set forth in *Ramirez*. For example, Plaintiff alleges that he suffered an injury that was directly caused by PRA, which corresponds with parts one and two of the standing consideration, that would likely be redressed by "[a] favorable judicial resolution," which corresponds with part three of the test.



hearing to resolve disputed issues of fact relevant to the Court's subject matter jurisdiction. *Astra Oil*, 2009 U.S. Dist. LEXIS 30245, at *5.

Where, as here, the record is underdeveloped, the district court should order limited jurisdictional discovery before ruling on the issue of subject matter jurisdiction. *See Greystone Bank v. Tavarez*, No. 09-CV-5192 (SLT), 2010 U.S. Dist. LEXIS 85462, at *3-5 (E.D.N.Y. Aug. 16, 2010) *(citing Sizova v. Nat. Institute of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.") (internal quotation marks omitted)); *Astra Oil*, 2009 U.S. Dist. LEXIS 30245, at *5-6 ("Here, although we acknowledge that it is plaintiff's burden to prove diversity, we find that the current record regarding plaintiff's principal place of business is simply too underdeveloped, conclusory and contradictory to permit any meaningful finding of fact at this time."); *SEG Vanguard General Corp. v. Ji*, 195 F. Supp. 2d 564 (S.D.N.Y. 2002) (resolving the factual issue raised by a motion to dismiss for lack of subject matter jurisdiction after discovery and a hearing); *Jedrejcic v. Croatian Olympic Comm*., 190 F.R.D. 60 (E.D.N.Y. 1999) (same).

Thus, remand for lack of Article III standing would be inappropriate at this time.  Rather, the court should allow the parties to participate in jurisdictional discovery regarding the impact of PRA's alleged collection methods (which could include communications to the consumer, debt collection lawsuits, the publishing of information to third-party consumer reporting agencies, etc.) and the exact nature of Plaintiff's alleged "actual damages."

## IV.     Conclusion

For the foregoing reasons, Plaintiff has pled a concrete and particularized injury sufficient to establish Article III standing.

We thank Your Honor for your time and consideration of this matter. If you have any questions or concerns, please do not hesitate to contact my office.


Respectfully submitted,

*/s/Stephen J. Steinlight*